1

SEMNAR & HARTMAN, LLP

2

Babak Semnar, Esq. (SBN 224890)
Bob@sandiegoconsumerattorneys.com
Jared M. Hartman, Esq. (SBN 254860)

3

jared@sandiegoconsumerattorneys.com
400 S. Melrose Dr., Suite 209

4

Vista, CA 92081
Telephone (951) 234-0881; Fax (888) 819-8230

5

6

Attorneys for Plaintiff
JIMMY GARREY

# U.S. DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

8

9

JIMMY GARREY, an individual,

Case No.:

Plaintiff,

10

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF, AND
DEMAND FOR JURY TRIAL, FOR
VIOLATIONS OF:**

11

v.

12

CITY LOAN, a business entity, form
unknown,

1. **FEDERAL TRUTH IN
   LENDING ACT,**

13

Defendant.

2. **FEDERAL TELEPHONE
   CONSUMER PROTECTION
   ACT,**

14

15

3. **STATE OF CALIFORNIA
   ROSENTHAL FAIR DEBT
   COLLECTION PRACTICES
   ACT**

16

17

Plaintiff, JIMMY GARREY, an individual, by and through his attorneys of

18

record, hereby complains and alleges as follows:

19

## INTRODUCTION

20

1.     Plaintiff, by and through his attorneys of record, brings this action to

21

secure redress from unlawful debt collection practices engaged in by Defendant CITY

1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  LOAN (hereinafter "Defendant") in violation of the Federal Truth In Lending Act

2  (hereinafter "TILA"); the Federal Telephone Consumer Protection Act (hereinafter

3  "TCPA"); and the State of California Rosenthal Fair Debt Collection Practices Act

4  (hereinafter "Rosenthal Act").

5       2.     The TILA promotes consumers' informed use of credit by requiring

6  meaningful disclosure of credit terms, and it states as follows: "It is the purpose of

7  this title [15 USCS §§ 1601 et seq.] to assure a meaningful disclosure of credit terms so

8  that the consumer will be able to compare more readily the various credit terms

9  available to him and avoid the uninformed use of credit, and to protect the consumer

10  against inaccurate and unfair credit billing and credit card practices."   15 U.S.C. §

11  1601(a).

12       3.     The TILA is a federal remedial statute that requires strict compliance, is to

13  be liberally interpreted in favor of the consumer, and applies to an individual or

14  business that offers or extends credit when four conditions are met: (i) the credit is

15  offered or extended to consumers; (ii) the offering or extension of credit is done

16  regularly; (iii) the credit is subject to a finance charge or is payable by a written

17  agreement in more than four installments; and (iv) the credit is primarily for personal,

18  family, or household purposes. 12 C.F.R. § 226.1(c).

19       4.     The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.,

20  ("TCPA") was designed to prevent calls like the ones described within this complaint,

21  and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints

2

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

5.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such *automated* or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12 (emphasis added); *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6.    Congress also specifically found that "the evidence presented to the Congress indicates that *automated* or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744 (emphasis added.)

7.    FCC Commissioner Jessica Rosenworcel has stated, "I detest robo-calls.

3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  We receive thousands of complaints a month about robo-calls, and our friends across

2  town at the Federal Trade Commission receive tens of thousands more.".

3

4      8.    In 15 U.S.C. § 1692(a)-(e), the U.S. Legislature made the following

   findings and purpose in creating the FDCPA:

5

6          Abusive practices. There is abundant evidence of the use of
           abusive, deceptive, and unfair debt collection practices by many
           debt collectors. Abusive debt collection practices contribute to the

7          number of personal bankruptcies, to marital instability, to the loss
           of jobs, and to invasions of individual privacy.

8

9          Inadequacy of laws. Existing laws and procedures for redressing
           these injuries are inadequate to protect consumers.

10         Available non-abusive collection methods. Means other than
           misrepresentation or other abusive debt collection practices are

11         available for the effective collection of debts.

12         Interstate commerce. Abusive debt collection practices are carried
           on to a substantial extent in interstate commerce and through

13         means and instrumentalities of such commerce. Even where
           abusive debt collection practices are purely intrastate in character,

14         they nevertheless directly affect interstate commerce.

15         Purposes. It is the purpose of this title [15 USCS §§ 1692 et seq.]
           to eliminate abusive debt collection practices by debt collectors, to

16         insure that those debt collectors who refrain from using abusive
           debt collection practices are not competitively disadvantaged, and

17         to promote consistent State action to protect consumers against
           debt collection abuses.

18

19     9.    In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the

20  following findings and purpose in creating the Rosenthal Act:

21         (a)(1) The banking and credit system and grantors of credit to

                                    4
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

(2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

## JURISDICTION AND VENUE

10.   This action arises out of Defendant's violations of the TILA and TCPA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1640(e) and 42 U.S.C. § 227(b); as well as supplemental jurisdiction over the State law causes of action pursuant to 28 U.S.C. § 1367(a).

11.   Because Defendant regularly conducts business within the State of California and is physically located at 3431 Cherry Avenue, City of Long Beach, personal jurisdiction is established.

12.   Venue in this District is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Orange, City of Yorba Linda, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this venue; and, (iv) Defendant has conducted business within this venue at all times relevant.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**FACTUAL ALLEGATIONS**

13.    Sometime in August 2015, Defendant began placing multiple calls per day to Plaintiff's wireless cellular telephone.

14.    Upon information and belief, each call was for the purpose of debt collection, and was therefore not for emergency purposes.

15.    Plaintiff takes no position with respect to whether he actually owes a debt to Defendant, as it is entirely irrelevant to the violations committed by Defendant that form the basis of the instant lawsuit.

16.    Each call placed to Plaintiff's cellular phone by Defendant was placed with an artificial voice message and an automatic telephone dialing system ("ATDS").

17.    An ATDS is equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and utilizes such equipment to dial such numbers, as defined in 47 U.S.C. § 227(a)(1)(A)-(B).

18.    Automatic telephone dialing systems place calls without human intervention until a connection is made with a person on the receiving end of the call, at which time the dialers attempt to connect the recipient with a live agent of the debt collector.

19.    On August 14, 2015, Plaintiff provided to Defendant written instruction via email to stop calling him, and requested that all communication be done in writing.

20.    Plaintiff's written email, therefore, operates as revocation of any purported prior express consent for Defendant to call Plaintiff's cellular phone.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

21.     Defendant's agent "Eddie Rodas" promptly responded and tersely told Plaintiff,

> If you would call or make contact with us to set up an arrangement you would avoid getting calls because we have a program that stops calls when account has an arrangement.  Make a note Sir [sic], it's not harassment when we are calling to cover a debt that you are past due for.  You contact whoever you wish Sir [sic], that doesn't concern me.  Have a great day Sir [sic]

22.     Since Plaintiff's revocation of consent on August 14, 2015, he has received at least 95 calls from Defendant.

23.     Plaintiff has insisted in multiple other emails to Defendant's agents that he wants them to stop calling him and to only communicate in writing, yet the calls have persisted.

24.     Each call placed by Defendant to Plaintiff's cellular telephone was placed with both an ATDS and an artificial voice message

25.     Plaintiff has saved voicemails of many calls received from Defendant, which confirm the calls were placed with both an ATDS and an artificial voice message.

26.     Based on the above response from Eddie Rodas on August 14, 2015, it is clear that Defendant knowingly and intentionally utilizes both an ATDS and an artificial voice message to place debt collection calls.

27.     Eddie Rodas' email also makes it clear that Defendant intentionally calls people with these calls with the goal of harassing people and forcing them to pay

7

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    money to Defendant just to make the calls stop.

2    28.    The calls are still continuing to this very day, and the TCPA violations are,

3    therefore, continuing to accrue.

4    29.    Defendant has also placed telephone calls to Plaintiff's elderly mother,

5    who is a patient of Parkinson's disease.

6    30.    Sometime in October of 2015, Defendant's agent informed Plaintiff's

7    mother that Defendant was looking for Plaintiff due to a debt he owed to "City Loan"

8    and claimed that Plaintiff would be arrested if he did not contact them and make a

9    payment.

10   31.    Such a claim is utterly false and clear harassment, as a simple failure to

11   pay a debt is nothing more than a civil breach of contract and is not a criminal violation.

12   32.    It is clear that Defendant's statement to Plaintiff's elderly mother was

13   intended to harass Plaintiff and force him into paying them money.

14   33.    As a result of hearing the claim that Plaintiff may be arrested, Plaintiff's

15   mother suffered fear and concern for her son, which in turn caused mental anguish upon

16   Plaintiff by way of fear, anxiety, nervousness, upset stomach, loss of sleep, and worry

17   that he will never be rid of Defendant's harassing conduct.

18   34.    When Plaintiff began receiving the phone calls in August 2015, he began

19   contacting Defendant in writing, via email, to request a billing cycle statement, as

20   Defendant had not sent one for several months.

21   35.    Defendant failed to provide him with the requested billing cycle statement

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  and claimed that he had to bring his account current.

2      36.   Thereafter, Plaintiff requested a billing cycle statement approximately six

3  times between the months of January-March 2016, as he had not received such a

4  statement since November 2015.

5      37.   As this line of credit concerns a close-ended line of credit,

6      38.   The TILA defines open-ended credit as follows:

7        a.   (i) The creditor reasonably contemplates repeated transactions;

8        b.   (ii) The creditor may impose a finance charge from time to time on an

9           outstanding unpaid balance; and

10        c.   (iii) The amount of credit that may be extended to the consumer

11           during the term of the plan (up to any limit set by the creditor) is

12           generally made available to the extent that any outstanding balance is

13           repaid.

14      39.   All three of the aforementioned criteria must be met for a plan to be

15  classified as open-end credit.  *See Perry v. Household Retail Servs.* (Middle Dist.

16  Alabama August 5, 1996) 953 F. Supp. 1370, 1374-1375.

17      40.   Moreover, pursuant to the Board's Staff Commentary, Congress intended

18  to "require 'closed-end' disclosures where an initial transaction is the purchase of

19  infrequently purchased items such as a home improvement or automobile" and in other

20  situations where it is not reasonable to conclude that future transactions are likely. S.

21  Rep. No. 73, 96th Cong., 2d Sess., at 2, *reprinted at* 1980 U.S.C.C.A.N. 280, 288.

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

41.     The TILA defines a closed-ended line of credit as simply consumer credit other than open-end credit.  12 C.F.R. § 226.2(a)(10); "Closed-end credit means consumer credit other than 'open-end credit' as defined in this section."

42.     Pursuant to "Regulation Z" of the TILA (12 C.F.R. § 1026.41), Defendant has been obligated at all times to provide to Plaintiff a periodic statement for each billing cycle upon the close-ended credit with a list of specific items required to be disclosed to Plaintiff.

43.     Defendant has failed to provide Plaintiff with a periodic statement for each billing cycle in connection with the account upon which Defendant was contacting Plaintiff in an attempt to collect.

44.     Defendant's violations described above have caused undue mental anguish and stress upon Plaintiff, in that he has suffered anxiety, nervousness, humiliation, loss of sleep, upset stomach inability to focus at work, and feelings of despair and hopelessness.

**FIRST CAUSE OF ACTION**
**12 C.F.R. § 226.7**
**(Violations of TILA)**

45.     Plaintiff re-alleges and incorporates by reference the above paragraphs, as though set forth fully herein.

46.     Defendant has failed to provide Plaintiff with a periodic statement for each billing cycle in connection with the account, and has even acknowledged this failure by stating he had to bring the account current to get this mandatory information, Defendant

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1   has committed multiple willful and deliberate violations of the TILA.

2       47.   Pursuant to its authority under 15 U.S.C. § 1604(a), the Board of

3   Governors of the Federal Reserve System issued Regulation Z.

4       48.   In interpreting the TILA and implementing Regulation Z of Federal

5   Reserve Board, opinions by the Board of Governors of the Federal Reserve System staff

6   construing the TILA or Regulation Z should be dispositive unless they are

7   demonstrably irrational, as the TILA is best construed by those who give it substance in

8   promulgating regulations under it, and Congress having specifically designated the

9   Board and its staff as the primary source for interpretation and application of truth in

10  lending law. *Ford Motor Credit Co. v Milhollin* (1980) 444 US 555, 63 L Ed 2d 22,

11  100 S Ct 790.

12      49.   Pursuant to 15 U.S.C. § 1640(a)(1)-(4), Plaintiff is entitled to actual

13  damages, statutory damages of not less than $400.00 and not greater than $4,000.00, as

14  well as attorneys' fees and costs for pursuing prosecution.

15      50.   The civil penalty provision of 15 U.S.C. § 1640 applies to a creditor's

16  failure to abide by regulations promulgated by the Federal Reserve Board. *Mourning v.*

17  *Family Publications Serv.* (1973) 411 U.S. 356, 36 L. Ed. 2d 318, 93 S. Ct. 1652.

18      51.   As a result of these violations, Plaintiff has suffered actual damages by

19  way of emotional distress since she has been ignorant of exactly how much to pay every

20  month, and has been unable to obtain the information necessary to consider his options

21  for paying the outstanding amount in full.

**SECOND CAUSE OF ACTION**
**(Violations of the TCPA)**
**47 U.S.C. § 227(b)**

52.     Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

53.     Defendant violated 47 U.S.C. 227(b)(1)(A)(iii) of the TCPA by using both an automatic telephone dialing system (ATDS) and artificial voice messages to call Plaintiff's wireless cellular phone at least 95 times after Plaintiff specifically revoked in writing any prior express for Defendant to call him, via email dated August 14, 2015.

54.     Since the calls were placed for debt collection attempts, the calls were not for emergency purposes.

55.     Because each call to Plaintiff was placed with both an ATDS and an artificial voice message, which means each single call is a separate violation of the TCPA, entitling Plaintiff to double statutory damages for each call. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) (holding that a single call using both an autodialer and a prerecorded voice constitutes two violations of the TCPA).

56.     Based on the email response from Eddie Rodas on August 14, 2015, it is clear that Defendant knowingly and intentionally utilizes both an ATDS and an artificial voice message to place debt collection calls.

57.     Eddie Rodas' email also makes it clear that Defendant intentionally calls people with these calls with the goal of harassing people and forcing them to pay

12
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    money to Defendant just to make the calls stop.

2        58.    The TCPA is a strict liability statute, and intent is only relevant in

3    determining whether to assess treble damages for willful/knowing violations.  In *Alea*

4    *London Ltd. v. American Home Services, Inc. (11 Cir. 2011) 638 F.3d 768, 776*, the

5    Eleventh Circuit stated, "The TCPA does not require any intent for liability except

6    when awarding treble damages … the intent for treble damages does not require any

7    malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct."

8        59.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to $500.00 per

9    strict liability violation, and $1,500.00 per willful violation.

### THIRD CAUSE OF ACTION
**(Violations of the Rosenthal Act)**
**Calif. Civ. Code § 1788.30**

12        60.    Plaintiff repeats, re-alleges, and incorporates by reference, all other

13    paragraphs as if fully stated herein.

14        61.    Plaintiff is a natural person, and is therefore a "person" as that term is

15    defined by California Civil Code § 1788.2(g) of the Rosenthal Act.

16        62.    Plaintiff is a "debtor" as that term is defined by California Civil Code §

17    1788.2(h) of the Rosenthal Act, since Defendant has attempted to collect from Plaintiff

18    payments upon an alleged debt for an automobile title loan, which debt was allegedly

19    incurred for personal and household purposes.

20        63.    The credit involved in this matter also constitutes a "consumer credit

21    transaction", as that term is defined by California Civil Code § 1788.2(e) of the

13
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Rosenthal Act, because funding was allegedly provided to Plaintiff for him to obtain funds from Defendant to be re-paid in the future with interest.

64.     Because Plaintiff, a natural person, was allegedly obligated to pay money to Defendant for a consumer credit transaction, the money allegedly owed was therefore both a "consumer debt" as that term is defined by California Civil Code § 1788.2(f) of the Rosenthal Act and a "debt" as that term is defined by California Civil Code § 1788.2(d) of the Rosenthal Act.

65.     Defendant, in the ordinary course of business, regularly, and on behalf of themselves, engages in the practice of collecting "consumer debts", and thereby engages in "debt collection" as that term is defined by California Civil Code section 1788.2(b) of the Rosenthal Act.

66.     Because Defendant engages in "debt collection", Defendant is therefore a "debt collector" as that term is defined by California Civil Code section 1788.2(c) of the Rosenthal Act.

67.     Defendant's statement to Plaintiff that they will not send any statements until Plaintiff makes a payment was Defendant's effort to force money out of Plaintiff in exchange for giving Plaintiff the information to which he is entitled by Federal statute, which amounts to unfair and unconscionable means in an attempt to collect a debt, as prohibited by 15 U.S.C. § 1692f, and is also necessarily a violation of the Rosenthal FDCPA via Calif. Civil Code § 1788.17, as the Rosenthal FDCPA has incorporated each of those provisions of the FDCPA.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

68.    By repeatedly calling Plaintiff with ATDS and artificial voice messages despite his clear insistence that the calls stop, Defendant has engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA; has communicated with him in a manner that Defendant had reason to know was not convenient in violation of 15 U.S.C. § 1692a(1) of the Federal FDCPA; and has engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. § 1692d of the FDCPA.  These violations of the FDCPA constitute violations of the RFDCPA as they have been incorporated therein by Calif. Civ. Code § 1788.17.

69.    By claiming to Plaintiff's mother that Plaintiff would be arrested if he were to not make a payment, which is an absolute false allegation, and Defendant's agents did so with the intention of scaring Plaintiff into paying the debt, Defendant has committed the following violations of the Federal FDCPA, each of which constitutes a violation of the Rosenthal Act, as they have been incorporated therein by Calif. Civ. Code § 1788.17:

      a.    Engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d, and

      b.    Engaged in false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e, and

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

c.  Has falsely represented the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A), and

d.  Has falsely uttered the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. § 1692e(4), and

e.  Has used false representations and deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10), and

f.  Has uttered a threat to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5), and

g.  Has uttered the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. § 1692e(7), and

h.  Engaged in unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f of the FDCPA.

70.  Plaintiff is informed and believes that these violations were willful, in that Defendant's own agents have informed Plaintiff that their debt collection efforts would only stop if he were to make payments upon the account.

16
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

71.   Pursuant to Cal. Civ. Code § 1788.30, Plaintiff is entitled to statutory damages of up to $1,000.00, actual damages, attorneys' fees, and costs of prosecution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant as follows:

### TILA VIOLATIONS

- An award of actual damages in the amount of $75,000.00, or as the jury may allow, pursuant to 15 U.S.C. § 1640(a);

- An award of statutory damages of $4,000.00 pursuant to 15 U.S.C. § 1640(a);

- An award of attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a).

### TCPA VIOLATIONS

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

///

17

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**CALIF. ROSENTHAL ACT VIOLATIONS**

- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

- An award of actual damages of $75,000.00, or as the jury may allow, pursuant to California Civil Code § 1788.30(a);

- An additional award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17, which is cumulative and in addition to all other remedies pursuant to California Civil Code § 1788.32

- An award of costs of litigation and attorneys' fees pursuant to Cal. Civ. Code § 1788.30(c);

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: 4-14-16                              Respectfully submitted,

                                           SEMNAR & HARTMAN, LLP

                              By:   */s/ Jared M. Hartman*_____
                                    Jared M. Hartman, Esq.
                                    Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**